JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, John Senn, appeals from the judgment of the Common Pleas Court affirming the order of the Civil Service Commission that terminated his employment with the Cleveland Police Department. For the reasons that follow, we affirm.
 FACTS AND PROCEDURAL HISTORY {¶ 2} The record reflects that the Cleveland Police Department hired Senn as a patrol officer on March 25, 1991. As an employee of the City, he was required to reside in Cleveland. In 2002, after receiving an anonymous tip that Senn did not live in Cleveland, the Civil Service Commission began an investigation into his residency.
 {¶ 3} At a hearing before a Civil Service Commission referee in May 2003, Senn testified that he and his wife initially lived at 19419 Kewanee in Cleveland. After their children were born, however, Senn's wife wanted to move out of Cleveland. In September 1996, Senn's wife and two children moved to a single-family home at 7652 Buchanan Court, Mentor, Ohio. One month later, Senn purchased a one-bedroom mobile home in the Euclid Beach Mobile Home Park, located at 7 Bristol Avenue in Cleveland, Ohio. Senn testified that he lived there with his brother-in-law until July 2002, when he moved to an apartment at 18432 Lakeshore Boulevard, Cleveland, Ohio.
 {¶ 4} Senn testified that he and his wife jointly own the home in Mentor and are not legally separated. According to Senn, after his wife refused to live with him in Cleveland, he decided that he would "try to keep my family together as best I could," so that "on my off days and every chance I could, I would go visit my kids and try to maintain a father/son/daughter relationship as best I could." Senn admitted that he cuts the lawn and does other maintenance work "all the time" at the house on Buchanan Court and that he sometimes sleeps there.
 {¶ 5} To establish proof of bona fide residency in the City of Cleveland, the Civil Service Commission requires seven items of documentary proof. At the hearing, Senn submitted numerous documents that allegedly verified his residency at both the Bristol Avenue and Lakeshore Boulevard locations pursuant to the Civil Service Commission requirements. After the hearing, Senn supplemented the record with additional documents regarding his residency at the Lakeshore Boulevard apartment.
 {¶ 6} The City called two witnesses at the hearing. Marion Wheeler, Residency Project Director for the City of Cleveland, testified that he initiated an investigation into Senn's residency after receiving an anonymous tip that Senn lived in Mentor with his wife and two children. Wheeler testified that although Senn never advised the City that he owned property in Mentor, he learned through his investigation that Senn and his wife jointly own the Buchanan Court house, but the utilities are in the wife's name. He also learned that Senn's children, ages seven and nine, attend Bellflower Elementary School in Mentor. During his investigation, Wheeler contacted the United States Postal Service and learned that Senn's name was listed as a mail recipient at the Buchanan Court address.
 {¶ 7} John Fryer, Residency Inspector for the Civil Service Commission, testified that, as part of the City's investigation, he conducted video surveillance of Senn on 35 different days from April 16, 2002 through September 4, 2002. The videotape was shown at the hearing and Fryer testified regarding his surveillance. Fryer testified that during the five-month surveillance period, he often observed Senn or his car at the Buchanan Court location, even though the surveillance was conducted on different days and at different times. Fryer testified further that although he also periodically checked the Bristol Avenue location during this time period, he never saw Senn's car there.
 {¶ 8} The referee subsequently issued a report and recommendation in which he concluded that Senn was not a bona fide resident of the City of Cleveland and recommended that he be dismissed from his employment. Senn appealed to the Civil Service Commission, which denied his appeal and upheld his discharge. Senn then appealed to the Common Pleas Court, which affirmed the order of the Civil Service Commission. This appeal followed.
 STANDARD OF REVIEW {¶ 9} In his first assignment of error, Senn contends that the trial court used an incorrect standard of review of the Commission's decision.
 {¶ 10} A city employee who has been discharged for violating a city's residency requirement may appeal from a decision of the municipal civil service commission pursuant to R.C. 124.34 and 119.12, or under R.C. Chapter 2506. See, e.g., Ward v. Cleveland, Cuyahoga App. No. 79946, 2002-Ohio-482; Maple Heights v. Karley, Cuyahoga App. No. 36564, 1977 Ohio App. Lexis 8342. Here, Senn elected to prosecute his appeal pursuant to R.C. 124.34 and 119.12. Therefore, this appeal is governed by R.C.124.34 and 119.12.
 {¶ 11} It is well established that administrative appeals brought pursuant to R.C. 124.34 and 119.12 are subject to trial[1] de novo. Wolfv. Cleveland, Cuyahoga App. No. 82135, 2003-Ohio-3261, at ¶ 8. The court of common pleas may substitute its own judgment on the facts for that of the civil service commission, based upon the court's independent examination and determination of conflicting issues of fact. Id., citingNewsome v. Columbus Civ. Serv. Comm. (1984), 20 Ohio App.3d 327. A trial court must not simply determine if the ruling of the Civil Service Commission was arbitrary or capricious, the standard for appeals brought pursuant to R.C. Chapter 2506, but must evaluate the evidence anew.
 {¶ 12} In an appeal from an order of dismissal of a member of a police department to the civil service commission, the burden is upon the appointing authority to prove the truth of the charges by a preponderance of the evidence. Cupps v. Toledo (1961), 172 Ohio St. 536, paragraph one of the syllabus. Here, Senn bore the initial burden of furnishing proof of his Cleveland residency in accordance with the Civil Service Rules.Ward v. Cleveland, Cuyahoga App. No. 79946, 2002-Ohio-482. If his documentary evidence satisfied the Civil Service Rules regarding proof of residency, the court of common pleas was obligated to then place the burden upon the City to demonstrate by a preponderance of the evidence that Senn's proofs were a sham and his bona fide residence was located outside of Cleveland. Id.
 {¶ 13} In its journal entry affirming the Commission, the trial court stated:
 {¶ 14} "Upon consideration of the transcript and such additional evidence as the court has allowed to be introduced,[2] the court affirms the order of the Civil Service Commission, finding the order is not unconstitutional, illegal, arbitrary, capricious, unreasonable, norunsupported by a preponderance of substantial, reliable, and probativeevidence on the whole record." (Emphasis added.)
 {¶ 15} Senn contends that this order indicates that the trial court did not conduct a de novo review of his appeal from the order of the commission. We disagree.
 {¶ 16} The trial court's order indicates that the court considered the transcript of the evidence presented to the Commission, as required in a de novo review. Moreover, as noted earlier, the City's burden was to prove the truth of the charges by a preponderance of the evidence. R.C.119.12 provides that the trial court may affirm the commission's order if it finds that the order is supported by reliable, probative and substantial evidence.
 {¶ 17} Here, the trial court's order states that the Commission's order finding that Senn is not a bona fide resident of Cleveland is supported by "a preponderance of substantial, reliable, and probative evidence on the whole record." Accordingly, although the trial court's order includes extraneous language concluding the Commission's order was not illegal, arbitrary, capricious, or unreasonable (abuse of discretion language), it adequately reflects that the trial court considered the record de novo and placed the appropriate burden on the City. While the trial court's language is conclusory, if appellant wanted to demonstrate abuse of discretion (this court's standard of review for such an appeal), he should have requested findings of fact and conclusions of law that could be reviewed by this court for such abuse.
 {¶ 18} Appellant's first assignment of error is overruled.
 MEETING THE RESIDENCY REQUIREMENT {¶ 19} In his second assignment of error, Senn contends that the trial court erred in determining that he was not a bona fide resident of Cleveland.
 {¶ 20} In reviewing the common pleas court's decision on an administrative appeal pursuant to R.C. 124.34, the appellate court's review is limited to a determination of whether the common pleas court's decision is supported by reliable, probative and substantial evidence and is in accordance with law. Wolf v. Cleveland, Cuyahoga App. No. 82135, 2003-Ohio-3261, at ¶ 10, citing R.C. 119.12; Arlen v. State (1980),61 Ohio St.2d 168; Ohio State Bd. of Pharmacy v. Poppe (1988),48 Ohio App.3d 222. Therefore, this court's review is limited to a determination of whether the court of common pleas abused its discretion. Id., citing In re Barnes (1986), 31 Ohio App.3d 201, 208.
 {¶ 21} To establish proof of residency within Cleveland, the Civil Service Commission requests seven items of documentary proof. Two documents are mandatory: 1) official homeowner's documents, including a deed, mortgage coupons, purchase agreement, or homeowner's insurance policy, or official lease documents, or a notarized agreement from the homeowner stating proof of Cleveland residency; and 2) completed 1040 tax return forms for federal, state and local income tax. An employee has the option of selecting the remaining five proofs of residency from a list of ten categories, which include: 1) voter registration; 2) homeowner's/renter's insurance policies showing a Cleveland address; 3) utility bills; 4) tax records; 5) school records; 6) Ohio identification card; 7) motor vehicle records; 8) financial records; 9) postal change of address form; and 10) other mail and current bills.
 {¶ 22} Senn contends that he produced the requested documentation at the hearing before the Civil Service Commission, the City did not refute the authenticity of the documents, and he provided a reasonable explanation regarding why his wife and children live in Mentor. Accordingly, Senn contends, he proved his residency with the City of Cleveland and the City failed in its reciprocal burden.
 {¶ 23} We are not persuaded.
 {¶ 24} The witnesses who testified for the City and the videotape introduced at the hearing demonstrated that Senn actually lived with his wife and two children at the Buchanan Court address, rather than in Cleveland. Marion Wheeler testified that Senn and his wife jointly own the Mentor home and that Senn is listed as a mail recipient at the Mentor address. John Fryer testified that although he periodically checked the Bristol Avenue location during his five-month surveillance of Senn, he never found Senn there. In addition, Fryer testified that although he conducted his surveillance on different days and at different times of the day, including early morning, midday, and late evening, he frequently observed Senn's vehicle parked in the same location in the driveway of the Mentor home. Fryer also observed Senn at the Mentor home on several different occasions wearing very casual clothing, such as shorts and no tee-shirt, or a bathrobe with no shoes. Fryer also observed a sign in front of the Buchanan Court home which stated "The Senn's."
 {¶ 25} We find this evidence sufficient to demonstrate that Senn did not actually reside in either the one-bedroom trailer at Bristol Avenue or the apartment on Lakeshore Boulevard, but rather, lived with his wife and two children in Mentor in a well-appointed suburban home. If, as he testified, Senn merely visited his children at the Buchanan Court address in order to maintain a relationship with them, it is highly unlikely that he would have his mail sent there. Likewise, Senn's casual clothing and his frequent repairs to the home are more indicative of that of a homeowner rather than someone who is merely visiting his children. Finally, if Senn actually lived in the mobile home at the Bristol Road location until July 2002, as he testified, Fryer would surely have seen him or his car there at least once over the five-month surveillance period. In light of this evidence, the City met its burden of proving that Senn's documentary proofs of his Cleveland residency were a sham and, therefore, the trial court did not abuse its discretion in finding that Senn was not a bona fide resident of Cleveland.
 {¶ 26} Senn's reliance on Wolf v. Cleveland, Cuyahoga App. No. 82135, 2003-Ohio-3261, and Ward v. Cleveland, Cuyahoga App. No. 79946, 2002-Ohio-4482, in which this court affirmed the trial court's decisions reversing orders of the Civil Service Commission finding that the police officers were not bona fide residents of Cleveland, is misplaced.
 {¶ 27} In Wolf, supra, this court held that the trial court did not abuse its discretion in finding Wolf to be a bona fide resident of the City. Applying the abuse of discretion standard in this case, to different facts, we hold that the trial court did not abuse its discretion in affirming the Commission. Senn's car was parked in the driveway of his Mentor home on 31 of the 35 days of surveillance. In addition, Senn was observed working around his home and he was dressed as if he lived there. Here, unlike Wolf, Senn's presence at the Mentor home, coupled with his actions, demonstrated that he lived there and made that home his residence.
 {¶ 28} Ward, supra, is similarly not helpful to Senn. In Ward, the only issue this court was asked to address on appeal was whether the trial court correctly placed the burden of proof upon the City to prove that Ward resided outside of the City of Cleveland. Accordingly, despite the fact that Ward lived in the same trailer park as Senn, Ward is not relevant to whether Senn was a bona fide resident of the City of Cleveland.
 {¶ 29} Here, the City met its burden of demonstrating that Senn lived in Mentor, not Cleveland. Accordingly, the trial court did not abuse its discretion in holding that the Commission's order finding that Senn was not a bona fide resident of Cleveland was supported by a preponderance of the evidence.
 {¶ 30} Appellant's second assignment of error is therefore overruled.
 DUAL RESIDENCY {¶ 31} In his third assignment of error, Senn argues that the City's employee residency requirement does not prohibit dual residency. Accordingly, Senn contends, the trial court erred in affirming the Commission's order discharging him from employment for violating the City's residency requirement.
 {¶ 32} Section 74 of the Charter of the City of Cleveland requires that "every temporary or regular officer or employee of the City of Cleveland, * * * shall, at the time of appointment, or within six months thereafter, be or become a bona fide resident of the City of Cleveland, and shall remain as such during his/her tenure with the City * * *. Any officer of employee of the City of Cleveland who fails to become a resident * * *, or who being a resident ** subsequently establishes a residence outside of the City, shall * * * be discharged from service with the City."
 {¶ 33} Civil Rule 17.10, promulgated by the Civil Service Commission consistent with it authority to promulgate rules implementing the Charter, states:
 {¶ 34} "Every temporary or regular officer or employee in the classified service shall be at the time of appointment, or within six months thereafter, be or become a bona fide resident of the City of Cleveland, and shall remain as such during his/her tenure with the City, all as required by Section 74(a) of the Charter.
 {¶ 35} "Any officer or employee in the classified service shall be terminated, following the procedures set forth in this rule, for either of the following:
 {¶ 36} "1. Failure to become a resident within six months of the employee's appointment.
 {¶ 37} "2. Establishing a residence outside of the City during the employee's tenure."
 {¶ 38} A "residence" is "the place where one actually resides." Black's Law Dictionary (7 Ed.Rev. 1999) 1310. One's domicile is "a persons's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere." Id. at 501. Thus, a person may have more than one residence at a time but only one domicile.
 {¶ 39} In light of these definitions, Senn argues that the Charter and the rule are vague regarding whether an employee may maintain more than one residence and, therefore, do not preclude dual residencies. Contrary to appellant's argument, however, the Charter and Rule 17.10 could not be more clear that an employee of the city may not maintain dual residencies and remain employed by the city. Specifically, both the Charter and Rule 17.10 clearly state that an employee is expected to maintain a residence within the City and if the employee establishes a residence outside the City of Cleveland, he or she will be terminated from employment. Accordingly, it is apparent that an employee of the City may not maintain one residence in the City and one outside it. In short, an employee may not maintain dual residencies.
 {¶ 40} Appellant's third assignment of error is overruled.
 CONSTITUTIONALITY OF SECTION 74 OF THE CITY CHARTER {¶ 41} In his fourth assignment of error, Senn contends that Section 74 of the City Charter violates his equal protection and due process rights because it is selectively and unevenly applied. Specifically, he contends that both Marion Wheeler and John Fryer are employed by the City but do not live there. Therefore, he contends, the disparate application of the residency requirements to him when compared to other city employees is a denial of his constitutional rights. We disagree.
 {¶ 42} The Supreme Court of Ohio has held that a city may impose a residency requirement upon its employees. Buckley v. Cincinati (1980),63 Ohio St.2d 42. In addition, to avoid the problem of legislative retroactivity, a city may exclude persons who are employees of the city when the residency requirement is enacted from the residency requirement. Id. That is exactly what was done when Section 74 of the Charter was enacted.
 {¶ 43} Section 74(d) of the City Charter provides that "the provisions of this section shall not apply to any officer or employee on the payroll of the City of Cleveland on the effective date of this section." The section was effective on November 29, 1982. Both Wheeler and Fryer were employed by the city as of that date and, accordingly, the residency requirements of Section 74 do not apply to them. Senn was not employed by the City until March 1991 and, therefore, the residency requirements are applicable.
 {¶ 44} Appellant's fourth assignment of error is therefore overruled.
Affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, P.J., Concurs.
 ANTHONY O. CALABRESE, JR., J., dissents with separate dissentingopinion.
[1] "The `trial,' in a trial de novo is the `independent judicial examination and determination of conflicting issues of fact and law, notwithstanding the evidence before the appellate court consists of the record of the proceedings in the lower tribunal. The trial is not necessarily `* * * a second event where the witnesses personally reappear and reaffirm or respeak their previous testimony. * * *' In fact, evidence in addition to the transcript and record of the commission's proceedings may only be admitted with the express permission of the reviewing court." Chupka v. Saunders (1986), 28 Ohio St.3d 325, 327-328. (Citations omitted.)
[2] Our review of the record indicates that no evidence was introduced in the trial court that was not presented to the Commission.
 DISSENTING OPINION